Robert RODRIGUEZ, Appellant

v.

The STATE of Texas, Appellee

No. 04–15–00204–CR

Court of Appeals of Texas,
San Antonio.

Delivered and Filed: March 23, 2016

Discretionary Review Granted
July 27, 2016

Susan Lee Schoon, Schoon Law Firm, P.C., New Braunfels, TX, for Appellant.

Heather McMinn, 25th Judicial District Attorney, Christopher M. Eaton, Assistant County Attorney, Seguin, TX, for Appellee.

Sitting: Karen Angelini, Justice, Marialyn Barnard, Justice, Luz Elena D. Chapa, Justice

Opinion by: Marialyn Barnard, Justice

A jury found appellant Robert Rodriguez guilty of aggravated assault—serious bodily injury, and the trial court sentenced him to twelve years' confinement and a fine. On appeal, Rodriguez contends the trial court erred in denying his request for a jury instruction on mistake of fact. We reverse the trial court's judgment and remand the matter to the trial court.

## BACKGROUND

Around 1:00 a.m., Omar Avila, a disc jockey for Club Azul, was leaving work. As he was getting into his car, two men approached and asked for a ride. Mr. Avila testified the men had been inside the club and they were "rowdy." When Mr. Avila refused to give them a ride, the men,

later identified as brothers Anthony Rodriguez ("Anthony") and Robert Rodriguez, became upset and "got in [Avila's face]." Mr. Avila, who admitted he was afraid, hurriedly got into his car and locked the doors. As he was backing up, the men began hitting the windows "trying to bang them in." The men continued to follow him, "yelling stuff." Mr. Avila, instead of heading to his original destination, drove to a nearby gas station where he called the club manager to tell him about the men. The manager told Mr. Avila a man "had just gotten beaten up." Mr. Avila then saw the men running away from the club; he followed them and called 911.

Shortly after Mr. Avila left the premises, a married couple, Maricella Plaud–Acosta and her husband Francisco Plaud–Acosta, walked out of the club. They were accosted by the same men, who again demanded a ride. The couple refused and walked to their SUV. Ms. Plaud–Acosta got in on the driver's side of the SUV, but as her husband attempted to get in on the passenger side, Anthony charged at him, preventing him from closing the door. Mr. Plaud–Acosta had one foot in the SUV and one foot out. Anthony demanded, "Give me the f_____ key and get the f___ out of the truck." Mr. Plaud–Acosta testified that when he tried to push Anthony away, Anthony grabbed the chain around his neck and pulled him out of the SUV. Mr. Plaud–Acosta stated that as they struggled, Rodriguez "started running around a car that was parked next to us," and began "hitting me from behind." As a result of the blows from behind, Mr. Plaud–Acosta dropped to his knees. At that point, both men began hitting and kicking him. Mr. Plaud–Acosta said the attack stopped when others came out of the club and said they were calling the police. Others testified the attack stopped only when police arrived. It is undisputed that Anthony and Rodriguez ran away. Mr. Plaud–

Acosta suffered serious injuries, including a broken nose, severely swollen eyes, and a fracture to his tibia plateau—the bone at the bottom of the knee. An orthopedic surgeon described the knee as "smashed" and "trashed." It required surgery, followed by a long recovery period and physical therapy.

Ms. Plaud–Acosta testified that after the attack on her husband began, she ran back to the club for help. Several people came out of the club. Two witnesses testified the brothers were still assaulting Mr. Plaud–Acosta when they came out of the club. One of those witnesses testified the brothers were laughing as they struck Mr. Plaud–Acosta.

The police arrived and began searching for the brothers. The brothers were quickly found—Mr. Avila had seen them run across the street and attempt to hide. Officers took the brothers back to the club where they were identified as the attackers; the officers arrested the men. A grand jury indicted Rodriguez for the offenses of aggravated assault—serious bodily injury and aggravated robbery. The State abandoned the aggravated assault—serious bodily injury charge, proceeding only on the aggravated robbery charge. However, as noted above, the jury found Rodriguez guilty only of the lesser included offense of aggravated assault—serious bodily injury. Ultimately, Rodriguez perfected this appeal.

### ANALYSIS

In this appeal, Rodriguez raises a single issue. He contends the trial court erred in denying his requested instruction on mistake of fact. The State counters, arguing the instruction was properly denied, but even if the trial court erred, the error was harmless.

### Standard of Review

In reviewing claims of jury charge error, we engage in a two-step process. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex.Crim. App.2015); *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex.Crim.App.2012). First, we determine whether the charge was erroneous, and if it was, we then determine whether the error was harmful. *Cortez*, 469 S.W.3d at 598; *Kirsch*, 357 S.W.3d at 649.

### Application

During the charge conference, the trial court announced its intention to include an instruction on transferred intent. The transferred intent instruction was included, according to the trial court, because Rodriguez may have intended to cause only bodily injury, i.e., may have committed an assault, but his actions resulted in Mr. Plaud–Acosta suffering serious bodily injury, i.e., may have committed aggravated assault. *See* TEX. PENAL CODE ANN. § 6.04(b)(1) (West 2011) (stating that person is criminally responsible for causing result if only difference between what actually occurred and what he desired, contemplated, or risked is that different offense was committed). The State obviously concurred with the trial court's assessment, stating during closing argument that transferred intent was "bad" for Rodriguez because Rodriguez "intended to cause Mr. Plaud–Acosta injury and ended up causing him serious bodily injury and he's responsible for that."

Rodriguez objected to the transferred intent instruction, but the trial court overruled his objection. Thereafter, Rodriguez requested a charge on mistake of fact. Mistake of fact is a defense wherein the defendant, through mistake, forms a reasonable belief about a matter of fact that negates the culpability required for the offense charged. *See* TEX. PENAL CODE ANN. § 8.02(a). In this case, Rodriguez argues he may have intended to cause bodily injury to Mr. Plaud–Acosta, but through mistake, he may have caused serious bodily injury, entitling him to the requested instruction. The trial court disagreed and refused to include an instruction on mistake of fact.

Rodriguez relies on *Thompson v. State*, 236 S.W.3d 787 (Tex.Crim.App.2007) and *Louis v. State*, 393 S.W.3d 246 (Tex.Crim. App.2012) in support of his claim that the trial court erred in refusing to include a mistake-of-fact instruction in the jury charge. In each of those cases, the Texas Court of Criminal Appeals was asked to decide whether a defendant was entitled to a mistake-of-fact instruction when the jury charge included an instruction on transferred intent. *See Louis*, 393 S.W.3d at 252; *Thompson*, 236 S.W.3d at 800.

The State argues neither case compels the result sought by Rodriguez. The State points out that in *Thompson*, the court stated that where the charge includes an instruction on transferred intent, mistake of fact *may* be raised as a defense. 236 S.W.3d at 800 (emphasis added). Moreover, although the court seemed to suggest that the use of a transferred intent instruction entitled the defendant to an instruction on mistake of fact, the court never reached the issue of whether the defendant in the case was actually entitled to a mistake-of-fact instruction because Thompson failed to request its inclusion in the charge. *Id.* (citing *Posey v. State*, 966 S.W.2d 57, 62 (Tex.Crim.App.1998) (holding that unless defendant timely requests jury instruction on defensive issue, he may not complain about its absence on appeal)). Thus, the court's statements regarding transferred intent mandating an instruction on mistake of fact when requested was merely dicta. We agree *Thompson* does

not, by itself, compel the result sought by Rodriguez. However, *Thompson,* when coupled with the court's decision in *Louis,* is another matter.

In *Louis,* the court was again called upon to determine whether the defendant was entitled to a mistake-of-fact instruction based on the trial court's decision to give an instruction on transferred intent. 393 S.W.3d at 252. In that case, the State argued, as it does here, that the language in *Thompson* was dicta, *Thompson* was wrongly decided, and is unsupportable in its application. *Id.* The State also argued in *Louis,* as it does here, that to be entitled to a mistake-of-fact instruction, the defendant still must "produce a fact about which he was mistaken, rather than simply denying the requisite mental state." *Id.* The defendant in *Louis* argued, much as Rodriguez does, that because he requested a mistake-of-fact instruction and the trial court instructed the jury on transferred intent, i.e., the defendant is criminally responsible for causing serious bodily injury—the offense of aggravated assault—even if he did not intend the injury to be serious as long as he intended or knew his conduct would cause bodily injury—the offense of assault, he was entitled to an instruction on mistake of fact. *Id.* at 253.

The court of criminal appeals set out the language in the statutes governing transferred intent and mistake of fact. *Id.* (citing Tex. Penal Code Ann. §§ 6.04(b)(1), 8.02(a)). The court then reviewed its decision in *Thompson.* The court specifically stated:

> We held in *Thompson,* ... that a defendant who is subject to a transferred intent provision is entitled, upon request, to a mistake-of-fact instruction.

*Id.* Thus, the court held that because the trial court gave the jury an instruction on transferred intent and Louis requested an instruction on mistake of fact, he was enti-

tled to have a mistake-of-fact instruction included in the jury charge. *Id.* at 254.

■ Applying *Louis* to the case before us, we hold that because the trial court gave the jury an instruction on transferred intent, i.e., instructed the jury it could find Rodriguez guilty of aggravated assault even if he only intended to commit the offense of assault, and Rodriguez requested a mistake-of-fact instruction, the trial court erred in refusing Rodriguez's request. *See id.* at 253–54. We must now determine whether the failure to include the requested mistake-of-fact instruction harmed Rodriguez.

In *Louis,* the court of criminal appeals recognized that because Louis had requested the omitted instruction, it had to determine whether he suffered "some harm." *Id.* at 254 (citation omitted). The court agreed with the holding of the court of appeals, which determined that because Louis's mental state was a "hotly contested issue" and his primary defense was that he did not intend to cause serious bodily injury or death, "[t]he failure to instruct the jury on the defense of mistake of fact was an impediment to [Louis's] ability to present his defense that he did not have the requisite *mens rea* to be found guilty and to argue that defense to the jury." *Id.* (citation omitted). The court recognized that when the absence of a requested instruction effectively denies a defendant the right to present his defense, the error is not harmless. *Id.*

Here, Rodriguez was subjected to the same impediment as Louis. In the absence of the requested mistake-of-fact instruction, Rodriguez was unable to effectively argue that although he might have intended to cause bodily injury, i.e., an assault, in an effort to aid his brother, he did not intend to cause serious bodily injury, i.e., committed an aggravated assault. *See id.* The evidence showed that for a

fight, the injuries suffered by Mr. Plaud-Acosta were unusual—the doctor testified the injuries he suffered are more of the type seen in car accidents or a fall from a significant height. It would not be unreasonable for Rodriguez to be mistaken about the type of injuries his actions—pushing, hitting and kicking the victim—would cause. However, because the trial court failed to give the requested instruction on mistake of fact, Rodriguez was unable to effectively present this defense, subjecting him to some harm.

## CONCLUSION

Based on the foregoing, we sustain Rodriguez's sole issue. We hold the trial court erred in refusing to give the requested mistake-of-fact instruction and as a result, Rodriguez suffered some harm. Accordingly, we reverse the judgment and remand this matter to the trial court for further proceedings consistent with this court's opinion.