**AFFIRM AS MODIFIED; Opinion Filed May 20, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00119-CR**

**ASHLEY NICOLE WILSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court No. 8**
**Dallas County, Texas**
**Trial Court Cause No. MA19-04281-J**

# MEMORANDUM OPINION

Before Justices Molberg, Nowell, and Kennedy
Opinion by Justice Kennedy

Ashley Nicole Wilson appeals her conviction for impersonating a security officer. In three issues, appellant challenges the sufficiency of the evidence to support her conviction, the trial court's admission of extraneous-offense/bad-act evidence, and the lack of any jury instruction on her mistake-of-fact defense. The State requests modification of the judgment to reflect the correct name of the attorney for the State. We overrule appellant's issues and sustain the State's cross-issue. Accordingly, we affirm the judgment as modified. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

BACKGROUND

Appellant had been working temporary jobs, including one that required her to wear a t-shirt that said "security" while she passed out brochures at a convention, when she decided she needed a career to support herself financially. Her mother told her about a private security company seeking new employees, North Texas Strike Force ("Strike Force"). Appellant applied and was hired in late 2018. As part of her employment, appellant completed a 40-hour training course in December 2018. Appellant bought her own uniform, which included a jacket with "North Texas Strike Force," her name, and a badge on the shoulder. Appellant also purchased a belt with a holster; she did not have a gun, but she did have empty magazines in her holster.

On March 31, 2019, appellant was working a 12-hour shift at an apartment complex. She was wearing the uniform and belt she had purchased and was sitting in a parked security guard car eating her lunch. Appellant saw a naked man walking past where she was parked in the parking lot. Appellant lowered the driver's side window and asked the man, later determined to be Christopher Willard, where he was going and where he was coming from. Willard walked towards appellant where she sat, reached through the half-open window of the car to hit her in her mouth, and then opened the driver's door to drag appellant out of the car. Two cars driving past the security guard car stopped, and the drivers distracted Willard, so that appellant was able to kick him off of her. Willard walked away from appellant, and she drove

the security guard car out of the complex and back inside the complex while observing where Willard was walking. Appellant informed dispatch what had happened and when that call "somehow got disconnected," she called the Dallas Police Department and the owner of Strike Force, Victor Hobbs.

Soon thereafter, a firetruck and ambulance arrived, as well as Hobbs. While waiting for emergency responders and Hobbs, appellant lost sight of Willard. Hobbs, who was armed with a gun, and appellant walked through the complex, looking for Willard in order to make sure no one else on the property was assaulted by him.

Hobbs and appellant located Willard in an apartment unit. Hobbs announced them as with Strike Force, and appellant approached the unit door, which was open a crack, to look inside. Willard shouted to leave him alone and closed the door on appellant's foot. Hobbs kicked down the door to free appellant's foot. Hobbs attempted to subdue Willard and directed appellant to give him handcuffs. While Hobbs was struggling to subdue Willard, appellant hit Willard with her flashlight. Hobbs and appellant ran out of the apartment unit, and Willard chased after them, armed with a board or table leg, which he swung at them. Victor Johnson, another security guard, arrived and unsuccessfully attempted to stun Willard using a stun gun. Johnson and Willard began fighting, while appellant and Hobbs told Willard to put down the board or table leg. Willard turned and went towards Hobbs who shot Willard. Hobbs yelled at appellant to call an ambulance. Appellant, Hobbs,

and Johnson remained with Willard until the police arrived.  The police split up the security guards and interviewed them separately.  Willard died from the gunshot wound inflicted by Hobbs.

Appellant was charged by indictment with impersonating a security officer. The case proceeded to trial before a jury, who found appellant guilty as charged in the indictment.  Appellant elected to be sentenced by the trial judge who imposed a sentence of three days of confinement in jail.  This appeal followed.

DISCUSSION

## I.      Sufficient Evidence Supports the Conviction

In her first issue, appellant challenges the sufficiency of the evidence to support her conviction of impersonating a security officer.

When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017)).  This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (quoting *Jackson*, 443 U.S. at 319).  We may not re-weigh the evidence or substitute our judgment for that of the factfinder.  *Id.* (citing *Williams v. State*,

–4–

235 S.W.3d 742, 750 (Tex. Crim. App. 2007)).  The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence.  *Id.* at 733 (quoting *Villa*, 514 S.W.3d at 232). Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial.  *Id.* (citing *Jackson*, 443 U.S. at 319; *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016); *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)).  We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution.  *Id.* (citing *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012)).  This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony.  *Id.* (citing *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010)).   Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.  *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13).

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case."  *Id.* (quoting *Malik v. State*, 953

S.W.2d 234, 240 (Tex. Crim. App. 1997)). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* (quoting *Malik*, 953 S.W.2d at 240) (citing *Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013)). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Id.* (quoting *Daugherty*, 387 S.W.3d at 665).

Appellant argues that although the defense of mistake-of-fact was not included in the jury charge, the hypothetically correct jury charge in this case would include a mistake-of-fact defense. We have previously rejected a similar argument. In *Raza v. State*, we noted that, "A hypothetically correct jury charge includes only the defensive issues applicable to the case that the defendant timely requests or objects to the omission from the jury charge. No. 05-17-00066-CR, 2018 WL 1062451, at *4 (Tex. App.—Dallas Feb. 27, 2018, no pet.) (mem. op., not designated for publication) (citing *Tolbert v. State*, 306 S.W.3d 776, 780 (Tex. Crim. App. 2010); *Posey v. State*, 966 S.W.2d 57, 61–62 (Tex. Crim. App. 1998)). As appellant later concedes in her third issue challenging the lack of mistake-of-fact defense instruction in the jury charge, she did not ask to include an instruction on mistake-of-fact defense, nor did she object to its omission. Therefore, the mistake-of-fact defense is not to be considered in an evaluation of the sufficiency of the evidence to

–6–

support appellant's conviction for impersonating a security officer. *See Raza*, 2018 WL 1062451, at *4 (citing *Cervantes v. State*, No. 07–14–00391–CR, 2015 WL 3610543, at *2 (Tex. App.—Amarillo June 9, 2015, no pet.) (mem. op., not designated for publication); *Osborne v. State*, No. 07–13–00156, 2015 WL 3463047, at *3, (Tex. App.—Amarillo May 29 2015, pet. ref'd) (mem. op., not designated for publication); *Pruiett v. State*, No. 05–12–00131–CR, 2013 WL 1277861, at *2 (Tex. App.—Dallas Feb. 25, 2013, pet. ref'd) (mem. op., not designated for publication)).

A person commits the offense of impersonating a security officer if the person "knowingly purports to exercise any function that requires licensure as a noncommissioned security officer or a security officer commission." Tex. Occ. Code § 1702.3875. An individual acts as a security officer if the individual is employed by a security services contractor and employed to perform the duties of a security guard. *See id.* § 1702.222. The Department of Public Safety of the State of Texas issues commissions to certain security officers and regulates security officers. *See id.* § 1702.004(a)(2),(5). "Security officer commission" means an authorization issued by the department that entitles a security officer to carry a firearm. *See id.* § 1702.002(21). The Public Safety Commission determines the qualifications of commissioned security officers. *See id.* § 1702.061(c). In order to be employed as a noncommissioned security officer, an individual must obtain the appropriate individual license. *See id.* § 1702.221(b)(1)(G). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding

–7–

his conduct when he is aware of the nature of his conduct or that the circumstances exist." TEX. PEN. CODE § 6.03(b).

Appellant concedes she was performing the duties of a noncommissioned security officer but urges that, at the time of the offense, she believed Hobbs had submitted her application to work as a noncommissioned security officer and that such application had been received and accepted on the date of the offense in the indictment, March 31, 2019, so that on that date she was licensed to be employed as a noncommissioned security officer. In support of her argument, she relies on her trial testimony she had completed a 40-hour training course in December 2018, that Hobbs submitted applications to the State on behalf of the security guards and that he had done so on her behalf, so that her application was pending on the date of the offense and she was waiting for the State to send her a pocket card showing she was licensed.[1] According to appellant, she was under the impression that she was licensed and allowed to work as a noncommissioned officer on the date of the offense. The record also contains the testimony of Detective Andrea Isom with the Dallas Police Department, the lead investigator in the death of Willard, who interviewed appellant as part of her investigation. Portions of that interview, both video and audio, were played for the jury, as well. Detective Isom testified she asked appellant if she had a noncommissioned license with her, and appellant answered

---

[1] "The department shall issue a pocket card for each individual license holder under this chapter." OCC. § 1702.232(a).

that she did and that it was active and current. The video confirms that inquiry and response, as well as appellant's statement that Hobbs had her license card.

However, the record also contains evidence contradicting the foregoing. Appellant testified at trial that in November 2018, when she was considering applying to work for Strike Force, she exchanged text messages with Hobbs about the job qualifications to work as a security guard. Hobbs informed her that she needed a "clean background."[2] Appellant asked whether a pending assault charge, a misdemeanor, would "stop me from getting the job?" After asking about whether the charge was currently pending and whether appellant knew if it will be dismissed, Hobbs stated, "They will not let you carry a gun with pending charges" and that she could work for him "until it's dropped but I will have to pay you out of pocket" and "under the table." Appellant admitted during her testimony that she knew she was "not supposed to get paid under the table." Appellant also admitted that during her deposition, which took place on January 22, 2020, she was asked whether she held any licenses or certifications on the night of the offense, and she answered, "I was in the—in the—on the verge of getting my—trying to send my information off to TOPS to get my license."

---

[2] Applications for licensing include fees for a criminal history check fee. *See* OCC. § 1702.203(a)(7). "An applicant is not eligible for a license or security officer commission issued under this chapter if the check reveals that the applicant has committed an act that constitutes grounds for the denial of the license or commission." *See id.* § 1702.282(a). "A license or security officer commission issued by the department is conditional on the department's review of criminal history record information." *See id.* § 1702.282(c).

We again note that we defer to the jury "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *See Zuniga*, 551 S.W.3d at 733 (quoting *Jackson*, 443 U.S. at 319)). Further, we presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Id.* (citing *Merritt*, 368 S.W.3d at 525). The jury could have found that appellant did not believe her application had been submitted to the State by the date of the offense. Alternatively, the jury could have found that, even if appellant believed it had been submitted, appellant understood, based on Hobbs' statements concerning the need for a "clean background," that the State would reject her application because of the pending assault charge against her. Although she texted Hobbs that she would know by December 12, 2018, whether the State would dismiss the charge, appellant presented no evidence that the assault charge was actually dismissed by the date of the offense. We conclude sufficient evidence supports appellant's conviction for knowingly purporting to exercise any function that requires licensure as a noncommissioned security officer.

We overrule appellant's first issue.

## II. No Harmful Error in Admitting Extraneous Offense Evidence

In her second issue, appellant urges the trial court committed harmful error in admitting evidence of extraneous offenses or bad acts during the guilt–innocence phase of trial in violation of rules 402, 403, and 404(b) of the Texas Rules of

Evidence. More specifically, appellant complains of the admission of evidence that she was involved in the altercation with Willard, that she struck him with her flashlight, that the other security guard Johnson was charged with assault of Willard, and that Hobbs was charged with Willard's murder.

## A. Preservation of Complaint Raised on Appeal

Rule 33.1 of the Texas Rules of Appellate Procedure governs preservation of error, and states, in part: "[T]he record must show that (1) the complaint was made to the trial court by a timely request, objection, or motion that: (A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." *See* TEX. R. APP. P. 33.1(a)(1). Error preservation does not involve a hyper-technical or formalistic use of words or phrases; instead, "[s]traight forward communication in plain English" is sufficient. *Pena v. State*, 285 S.W.3d 459, 463 (Tex. Crim. App. 2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 908–09 (Tex. Crim. App. 1992)). To avoid forfeiting a complaint on appeal, the party must "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it." *Id.* at 464 (quoting *Lankston*, 827 S.W.2d at 909). This gives the trial judge and the opposing party an opportunity to correct the error. *See id.* Moreover, an objection must be made each time inadmissible evidence is offered unless the complaining party obtains a running

objection or obtains a ruling on his complaint in a hearing outside the presence of the jury. *Lopez v. State*, 253 S.W.3d 680, 684 (Tex. Crim. App. 2008).

Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial. *See Pena v. State*, 285 S.W.3d at 464. In making this determination, we consider the context in which the complaint was made and the parties' shared understanding at that time. *See id.*

Prior to trial, defense counsel moved to limit evidence "that other people were charged with crimes[,] that someone was shot[, and] that that same individual passed away as a result of being shot." Defense counsel urged such evidence was not relevant and that the prejudice outweighed any probative value. *See* TEX. R. EVID. 402, 403. The trial court denied appellant's objections, but granted defense counsel's request for a running objection to any such evidence. Thus, we conclude appellant preserved her objections to the admission of evidence that other people were charged with crimes, that someone was shot, and that that individual died from that shooting as violating rules 402 and 403. As for her complaints regarding evidence that she was involved in the altercation with Willard and that she struck him with a flashlight, we note that she did not preserve any objection to that evidence either as part of a running objection, in a hearing outside the presence of the jury, or when such evidence was offered at trial.

As for her complaint regarding rule 404(b),[3] we note that she filed a motion in limine to exclude any questioning or mention of "the fact that the Defendant herein may have engaged in any extraneous offense, wrong or act before, during or after the commission of the offense alleged in the indictment" until after a hearing on the admissibility of such evidence had taken place. However, "a preliminary ruling on a motion *in limine* does not preserve error in the admission or exclusion of evidence." *Geuder v. State*, 115 S.W.3d 11, 14 n.9 (Tex. Crim. App. 2003). Nor does the record reveal that appellant raised any objection under rule 404(b) to that evidence later at trial.[4] Accordingly, we conclude she failed to preserve any objection under rule 404(b).

We will now review the trial court's decision to admit or exclude evidence that other people were charged with crimes, that someone was shot, and that that individual died from that shooting. We review this decision under an abuse of discretion standard. *De La Garza v. State*, No. 05-09-00854-CR, 2011 WL 768872, at *1 (Tex. App.—Dallas Mar. 7, 2011, no pet.) (not designated for publication) (citing *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007)). We reverse only when the judge's decision was so clearly wrong as to lie outside the zone of

---

[3] Rule 404(b) prohibits "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *See* TEX. R. EVID. 404(b)(1).

[4] Appellant objected to the evidence that she had a pending misdemeanor assault charge, which was raised during discussion of her text messages with Hobbs prior to her employment with Strike Force. She does not argue admission of that evidence was erroneous on appeal, however.

reasonable disagreement, and we uphold the ruling if it was correct on any theory reasonably supported by the evidence and applicable to the case. *See id.* (citing *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003); *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)). This is so even if the trial judge gives the wrong reason for the decision. *See id.* (citing *Laney*, 117 S.W.3d at 857). We review the trial court's evidentiary ruling in light of the evidence that was before the trial court at the time the ruling was made. *See id.* (citing *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000)).

### B.    *Analysis*

Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. TEX. R. EVID. 401. Irrelevant evidence is inadmissible. TEX. R. EVID. 402. The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. 403.

Appellant urges that evidence that other people were charged with crimes, that someone was shot, and that that individual died from that shooting was not necessary to establish evidence of the offense for which she was on trial: "knowingly purport[ing] to exercise any function that requires licensure as a noncommissioned

–14–

security officer or a security officer commission." *See* Occ. § 1702.3875. More specifically, she complains of the prosecutor's opening statement:

> Now, we are here because of a murder. The fact that we know that Ashley Nicole Wilson was not a noncommissioned—a licensed noncommissioned officer in the state of Texas is because of a murder investigation.
>
> Now, we're not litigating the facts of the murder here today. We're primarily going to be concerned with what Ashley Nicole Wilson was doing on the night that this murder took place.
>
> That being said, you're going to hear evidence that talks about the murder.

Appellant also complains of certain testimony of Detective Isom, the lead investigator in the death of Willard, who interviewed appellant as part of her investigation. Portions of that interview were played for the jury, as well. During the State's examination of Detective Isom, the prosecutor stated that Hobbs was arrested for the murder of Willard and questioned the detective about appellant's statements in the interview video, in particular appellant's actions in searching for and attempting to restrain Willard, as well as Hobbs' shooting and killing of Willard. In the video played for the jury, the detective questioned appellant about the events of that night, beginning with Willard's assault of her and continuing with appellant's and Hobbs' interactions with Willard, including Hobbs' shooting of Willard. Additionally, near the conclusion of the video interview, the detective informed appellant that Willard had later died and that Hobbs was being charged with Willard's murder.

Assuming without deciding the trial court erred by admitting the complained-of portions of the prosecutor's opening statement and questions, Detective Isom's testimony, and appellant's video statements, we conclude any error is harmless. The erroneous admission of evidence is non-constitutional error. *Foster v. State*, 525 S.W.3d 898, 909 (Tex. App.—Dallas 2017, pet. ref'd) (citing *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010)). Accordingly, any error must be disregarded unless it affected appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). Substantial rights are not affected if, after examining the record as a whole, we have fair assurance that the error did not influence the jury or had but a slight effect. *Foster*, 525 S.W.3d at 909 (*Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)).

In assessing the likelihood the jury's decision was adversely affected by the error, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how the error might be considered in connection with other evidence in the case. *Foster*, 525 S.W.3d at 909 (citing *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); *Schutz v. State*, 63 S.W.3d 442, 444–45 (Tex. Crim. App. 2001)). We examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence. *Foster*, 525 S.W.3d at 909 (citing *Coble*, 330 S.W.3d at 280).

We have examined the record and have a "fair assurance" the admission of the preserved complained-of evidence did not influence the jury or had but a slight effect. Appellant complains the admission of this evidence caused the jury to make an emotional decision that was not based on the testimony and evidence concerning the instant offense but instead on the improper basis of the alleged offenses of aggravated assault and murder. But, as appellant appears to concede on appeal, the evidence that she was "exercising any function that requires licensure as a noncommissioned security officer or a security officer commission" was undisputed; she disputed whether she knew she was not so licensed at the time of the alleged offense. The evidence showed she was patrolling in a security guard car, wearing a uniform that had "North Texas Strike Force," her name, and a badge on the shoulder, a utility belt with a gun holster, a flashlight, mace, and two sets of handcuffs. Appellant was with Hobbs when Hobbs announced them to Willard as with Strike Force. Thus, the only disputed evidence was whether appellant was knowingly purporting to exercise any function that requires licensure as a noncommissioned security officer. It is difficult to conclude how knowledge that Hobbs shot and killed Willard and that he and Johnson were charged with murder and aggravated assault, respectively, would affect a jury's decision on whether appellant knew she was

licensed to work as a security guard at the time of the offense. Accordingly, we conclude any error did not affect the jury or had but slight effect on its verdict.[5]

We overrule appellant's second issue.

## III. No Error in Not Instructing Jury on Appellant's Mistake-of-Fact Defense

In her third issue, appellant urges the trial court committed reversible error in failing to instruct the jury on her mistake-of-fact defense.

"It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." TEX. PENAL CODE § 8.02(a). Thus, this defense applies when the defendant's mistaken belief, if accepted as true, negates the culpable mental state for the crime charged. *Guyger v. State*, No. 05-19-01236-CR, 2021 WL 5356043, at *4 (Tex. App.—Dallas Nov. 17, 2021, pet. ref'd) (not designated for publication) (citing *Granger v. State*, 3 S.W.3d 36, 41 (Tex. Crim. App. 1999)).

Appellant acknowledges she did not request an instruction on mistake of fact—nor did defense counsel object to any such omission, but she argues the trial court should have sua sponte provided an instruction to the jury based upon the facts and evidence that she presented at trial. The State responds that mistake of fact is a

---

[5] As for the sentence, any error in admitting the complained-of evidence could not have affected the jury because she elected to be sentenced by the trial judge.

defense that must be requested to be included in the charge. *See Thomas v. State*, 236 S.W.3d 787, 800 (Tex. Crim. App. 2007). We agree with the State.

A defendant cannot complain on appeal about the trial judge's failure to include a defensive instruction that he did not preserve by request or objection: he has procedurally defaulted any such complaint. *Turner v. State*, 626 S.W.3d 88, 100 (Tex. App.—Dallas 2021, no pet.) (citing *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013); *Posey v. State*, 966 S.W.2d 57, 61 (Tex. Crim. App. 1998)); *see also Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (noting the *Posey* court said Article 36.14 of Texas Code of Criminal Procedure imposes no "duty on trial courts to *sua sponte* instruct the jury on unrequested defensive issues" such as mistake of fact).

Because appellant failed to preserve her complaint, we overrule appellant's third issue.

## MODIFICATION OF THE JUDGMENT

In a single cross-issue, the State requests that this Court modify the judgment to correct the name of the attorney for the State. The record reflects that Patrick Capetillo appeared at trial on behalf of the State, but the judgment lists as "Attorney for State: Omoniyi Olayiwola." We may modify a trial court's written judgment if the necessary information to do so is contained in the record. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly,

–19–

we modify the judgment to delete "Omoniyi Olayiwola" and insert "Patrick Capetillo" as "Attorney for State."

**CONCLUSION**

We modify the judgment to delete "Omoniyi Olayiwola" and insert "Patrick Capetillo" as "Attorney for State." We affirm the judgment as so modified.


         /Nancy Kennedy/

         NANCY KENNEDY

         JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47
230119F.U05



# Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

ASHLEY NICOLE WILSON,
Appellant

No. 05-23-00119-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 8, Dallas County, Texas Trial Court Cause No. MA19-04281-J.
Opinion delivered by Justice Kennedy. Justices Molberg and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We modify the judgment to delete "Omoniyi Olayiwola" and insert "Patrick Capetillo" as "Attorney for State."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 20th day of May, 2024