

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0589-22

### AARON CALEB SWENSON, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### BOWIE COUNTY

KELLER, P.J., delivered the opinion of the Court as to Parts I, II–A, II–B, II–C, and III, in which HERVEY, YEARY, KEEL and MCCLURE, JJ., joined, and filed an opinion as to Parts II–D, II–E, II–F, and II–G, in which HERVEY, KEEL and MCCLURE, JJ., joined. RICHARDSON and NEWELL, JJ., concurred. WALKER, J., filed a dissenting opinion. SLAUGHTER, J., filed a dissenting opinion.

In this prosecution for attempted capital murder, we must decide whether Appellant crossed the line between "mere preparation" and attempt. We conclude that he did cross that line because, with the expressed intent to kill, he hunted a particular individual. We arrive at this conclusion based on the following facts: (1) having expressed an intent to kill a police officer, Appellant drove around in his vehicle searching for a potential victim; (2) after spotting a police vehicle, and with

an expressed intent to kill, he drove to the place where he had spotted that vehicle; and (3) he had within easy reach at least one loaded firearm with a round in the chamber.[1]  Consequently, we reverse the judgment of the court of appeals.

## I. BACKGROUND

### A. Facts

Appellant was a member of the anti-government and anti-law-enforcement "Boogaloo" movement.  In February and March of 2020, his social media accounts included posts and comments glorifying the killing of police officers.

On April 11, 2020, he posted a series of messages on Facebook that suggested that he intended to find a police officer to kill that evening.  Specifically, Appellant posted:

> [8:28 p.m.]: Better scarf down some of these fun fungi if I'm gonna beserk my way to Valhalla.

> [9:09 p.m.]: Wew, the magic and alcohol is kicking in.  I feel like hunting the hunters.

> [9:14 p.m.]: Who wanna see me hunt the hunters?!?!

> [9:51 p.m.]: His name was Duncan will be the last thing they hear.

> [10:06 p.m.]: Alright, y'all hold TF up and let me get rollin.  It'll be worth it.

> [10:09 p.m.]: This isn't meant to end well for me, just saying.  I'm done with the tyranny and corruption.

At 10:15 p.m., Appellant began to stream video via Facebook Live while driving his truck. He left his home in Hooks and headed toward Texarkana on Interstate 30.  On the livestream, Appellant said he was going to retaliate for Duncan Lemp's death and warned that police would get

---

[1]  Appellant had three loaded firearms, each with a round in the chamber, but our holding does not turn on the number of firearms possessed.

"capped" and "die tonight." After being alerted by multiple 9-1-1 calls, police officers began watching the livestream, but they had difficulty locating Appellant.

At around 10:44 p.m., Appellant spotted Texarkana Police Officer Jonathan Price's marked patrol car on the frontage road. Appellant said, "There's one" and that "he is waiting for some people." Appellant laughed and then said he was going to see if he could "fucking get him." He soon said he would need to turn around and find the next exit. About a minute later, he said, "Found my prey." The livestream was interrupted by a phone call. Almost two-and-a-half minutes after starting a second livestream, Appellant referred to the livestream being interrupted and said, "We're on the way to the prey. I had to turn around."

Officer Price, who was watching the livestream, drove away because he realized he might be the target. Appellant left the interstate and made at least one U-turn to arrive at the location where he had seen Officer Price's patrol car. At 10:53 p.m., Appellant asked, "Where'd he go? Where'd he go? Is he running?" Appellant drove up and down looking for Officer Price for nine minutes. At 11:00 p.m., he said, "Believe me, when I go to the fucking shooting, you're gonna to see it."

Appellant then began following another officer, saying, "There's one. There's one." But then, six or seven police cars appeared and followed Appellant with their overhead lights and sirens on. Appellant fled, and the police followed. One of Appellant's tires was later punctured by spike strips, but he continued to drive until the tire completely deflated, less than a mile from his home. For about twenty to twenty-five minutes, a standoff then ensued—with Appellant ignoring police commands and the police not wanting to approach out of safety concerns—until he surrendered.

In Appellant's truck were three firearms—a 9mm TEC-9 Luger handgun, a .45 ACP

handgun, and a 12-gauge shotgun. All were loaded,[2] and each had a round in the chamber (a bullet or a shotgun shell). The TEC-9 was wedged between the driver's seat and the center console, and the two other weapons were in the front passenger seat. The police also found a sword and 118 rounds of ammunition, most of which were in magazines.[3]

### B. Appeal

One of Appellant's complaints on appeal was a challenge to the sufficiency of the evidence to prove attempted capital murder. He contended that the State showed only that he committed acts amounting to "mere preparation." The court of appeals agreed.[4] That court acknowledged that, for attempt offenses, there is an "imaginary line" that separates "mere preparatory conduct" from an act that "tends to effect the commission of the offense."[5]

The court found that attempts that primarily threaten people appear to require the defendant to (1) be in striking distance of the victim, (2) possess resources to attack the victim, and (3) take a weapon in hand and position or move it in the direction of the victim.[6] The court distinguished these requirements from those it perceived attached to attempts to commit property crimes, which it found were (1) the defendant being at or close to where the victim was, (2) the defendant possessing the

---

[2] The TEC-9 was loaded with twenty-four rounds of ammunition, the .45 had seven rounds, and the shotgun had eight rounds.

[3] There was testimony that "an average patrol officer does not even carry this much ammunition on a regular patrol shift."

[4] *Swenson v. State*, 654 S.W.3d 144, 147 (Tex. App.—Texarkana 2022).

[5] *Id.* at 150.

[6] *Id.* at 151.

resources to commit the crime, and (3) the defendant's overt act moving him toward commission.[7]

Turning to the facts of the present case, the court of appeals first held that Appellant's threats and plans did not constitute acts beyond mere preparation.[8] The court then said it was "left with allegations that Swenson armed himself, drove around Texarkana, and attempted to locate a police officer."[9] The appellate court said that these latter acts were also mere preparation.[10] The court also said that the mere possession of a weapon normally amounted only to mere preparation.[11] The court said that the cases involving attempted murder indicated that crossing the line from preparation to attempt required "at least grasping a weapon and in some way directing the grasped weapon toward the intended victim."[12] The court said Appellant did not meet this requirement because he never "brandished, wielded, or displayed any of his firearms or his sword in the vicinity or direction of any police officers."[13]

The court of appeals finally found that Appellant's last act of "turning his vehicle around to return to a spot where he had just seen an officer" was not sufficient to cross the line between mere preparation and attempt.[14] The court of appeals further said, "We cannot see how driving to an

---

[7] *Id.* at 150.

[8] *Id.* at 153.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* at 153-54.

[13] *Id.* at 154.

[14] *Id.*

area—even turning around to seek an officer he had just spotted—can be said to have tended but failed to effect the murder of an officer within the meaning of Section 15.01(a) of the Texas Penal Code and the interpreting caselaw."[15]

Having found that Appellant had not crossed the line from mere preparation to attempt, the court found the evidence legally insufficient to support the conviction.[16] The court reversed the conviction for attempted capital murder and rendered an acquittal on that offense.[17] The court found an acquittal necessary, despite what it said was a "mountain of intent evidence."[18] Because it rendered an acquittal on the sufficiency claim, the court of appeals did not address Appellant's other claims.[19]

## II. ANALYSIS

### A. Sufficiency Standards

The standard for reviewing the sufficiency of the evidence to support the elements of the offense is whether, in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt.[20] Sometimes, however, the sufficiency of the evidence turns on what the statute defining the offense means, a legal question

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* at 155.

[19] *Id.* at 155 n.16.

[20] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Ratliff v. State*, 663 S.W.3d 106, 112 (Tex. Crim. App. 2022).

that is reviewed *de novo*.[21]  Such is the case here.

### B. The Offense

A person commits capital murder of a peace officer when he intentionally or knowingly kills a peace officer who is acting in the lawful discharged of an official duty and who the person knows is a peace officer.[22]  "Peace officer" is defined to include the type of peace officer Appellant pursued.[23]  A person commits an "attempt" offense if, "with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended."[24]  "If a person attempts an offense that may be aggravated, his conduct constitutes an attempt to commit the aggravated offense if an element that aggravates the offense accompanies the attempt."[25]

The evidence is sufficient to show that Appellant had the specific intent to commit a capital murder: he intended to kill the police officer inside the patrol car he spotted.  Also, the evidence is sufficient to show that he knew he was targeting a police officer (and in fact specifically intended to do so), so an aggravating element was shown.  The disputed question is whether Appellant did an act "amounting to more than mere preparation" that tended but failed to effect the murder of a peace officer.

### C. Texas "Attempt" Caselaw

---

[21]  *Ratliff, supra* at 114.

[22]  TEX. PENAL CODE § 19.03(a)(1); *see also id.* § 19.02(b)(1).

[23]  *See* TEX. CODE CRIM. PROC. art. 2.12.

[24]  TEX. PENAL CODE § 15.01(a).

[25]  *Id.* § 15.01(b).

We have construed the attempt statute to draw an "imaginary line" that separates an act that amounts to no more than "mere preparation" from an act that tends but fails to effect the commission of the offense.[26] Although commission of "the last proximate act" needed for the crime would of course constitute an attempt,[27] we have concluded that the legislature did not intend to draw the imaginary line that close to the offense.[28] So, shooting at an intended victim and missing would certainly constitute attempted murder but, we have concluded, the legislature did not require a would-be murderer's scheme to progress that far to constitute the attempted crime.[29] We have held that an attempted murder occurred when the defendant "pulled a loaded revolver in direct violation of police instructions and moved it in such a way as to aim at two officers."[30] By contrast, this Court has said that "simple acquisition and possession of a weapon would, in *most* situations, be preparation" that did not cross the line into attempt.[31]

The court of appeals has taken the holding in *Godsey* that aiming at police officers is a *sufficient* "more than mere preparation" act for attempted murder as support for the proposition that

---

[26] *Thornton v. State*, 425 S.W.3d 289, 306 n.85 (Tex. Crim. App. 2014); *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex. Crim. App. 1984); *McCravy v. State*, 642 S.W.2d 450, 460 (Tex. Crim. App. 1982).

[27] *Thornton*, *supra* at 306 n.85.

[28] *Flournoy*, 668 S.W.2d at 383; *McCravy*, 642 S.W.2d at 460.

[29] *Godsey v. State*, 719 S.W.2d 578, 583 (Tex. Crim. App. 1986) ("To require some proof that a defendant attempted to fire and the gun misfired or the shot missed its target undermines the notion of attempt offenses in which the act is more than mere preparation that 'tends but fails to effect the commission of the offense intended.'").

[30] *Id.*

[31] *Gibbons v. State*, 634 S.W.2d 700, 706 (Tex. Crim. App. 1982) (quoting from *Hart v. State*, 581 S.W.2d 675, 678 (Tex. Crim. App. 1979)) (emphasis added).

it is a *necessary* such act,[32] but that conclusion does not follow. The court of appeals also cited several of our other cases,[33] but none are on point. In *Flanagan v. State*, the defendant fired a shotgun at a following police car.[34] We held that attempted murder required, among other things, a showing that the defendant had a specific intent to kill,[35] but we also held that this intent could be inferred from the conduct in question.[36] *Flanagan* did not address the "more than mere preparation" aspect of attempt at all, much less say that the conduct that occurred—the actual shooting of a firearm at a police officer—was needed for that purpose.[37] *Morrison v. State* held only that the charging instrument must allege either the "more than mere preparation" wording of the attempt statute or the defendant's act that purports to fulfill that statutory language.[38] In *Neal v. State*, this Court held that the defendant had not shown an intent to kill because the evidence showed only that the defendant reached for his gun and ultimately threw it to the ground.[39] As with *Flanagan*, *Neal* addressed only the "intent to kill" element of an attempted murder offense and did not address the "more than mere preparation" element.[40]

---

[32] *See Swenson*, 654 S.W.3d at 151 (citing *Godsey*).

[33] *See id.* (citing *Flanagan*, *Morrison*, and *Neal*, *infra*).

[34] 675 S.W.2d 734, 742-43 (Tex. Crim. App. 1984).

[35] *Id.* at 740-42.

[36] *Id.* at 744-45.

[37] *See id.* at *passim*.

[38] 625 S.W.2d 729, 730 (Tex. Crim. App. 1981).

[39] 534 S.W.2d 675, 676 (Tex. Crim. App. 1975).

[40] *Id.* at *passim*. And we are not concerned in the case before us with whether circumstantial conduct involving a weapon was enough to infer intent; the record in the present case contains plenty

About the line between preparation and attempt, we have said that attempt law "allows intervention before the defendant has come dangerously close to committing the intended crime and allows the police a reasonable margin of safety after the intent to commit the crime was sufficiently apparent to them."[41] "The precise intent of Sec. 15.01 is to punish action for the intended offense while allowing intervention before an act which could constitute the offense itself occurs."[42]

### D. Model Penal Code

The Model Penal Code, drafted by the American Law Institute in 1962, "became highly influential throughout the United States, including in Texas."[43] Prior "attempt" cases from this Court have cited from the Model Penal Code's attempt provisions or from the commentary.[44] As we shall see, the text of the Model Penal Code provisions differ significantly from the Texas attempt statute, but the Texas statute appears to echo some of the commentary that accompanies the Model Penal Code draft.

Although the Model Penal Code sets out three ways of committing attempt, the third way is the only analogue to the Texas Penal Code's attempt statute:

> A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:
>
> * * *

of evidence of intent from the Facebook livestream.

[41] *Godsey*, 719 S.W.2d at 583.

[42] *Id.*

[43] *Thompson v. State*, 236 S.W.3d 787, 795 (Tex. Crim. App. 2007).

[44] *Laster v. State*, 275 S.W.3d 512, 526-27 & nn.12-13 (Tex. Crim. App. 2009); *Thomas v. State*, 708 S.W.2d 861, 863 (Tex. Crim. App. 1986).

purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.[45]

This "substantial step" wording differs significantly from the "more than mere preparation" language of the Texas statute, but the Model Penal Code adds further wording to clarify the meaning of "substantial step":

Conduct shall not be held to constitute a substantial step under Subsection (1)(c) of this Section unless it is strongly corroborative of the actor's criminal purpose.[46]

The explanatory note to the Model Penal Code attempt provision describes the "substantial step" method of attempt as involving a situation "where the actor has not yet completed his own conduct and the problem is to distinguish between acts of preparation and a criminal attempt."[47] The explanatory note describes the "strongly corroborative" elaboration of the "substantial step" element as "elaborat[ing] on the preparation-attempt problem."[48]

The expanded commentary describes two possible focuses of the criteria for when the preparation-attempt line is crossed: (1) "the dangerousness of the actor's conduct, measured by objective standards" and (2) "the dangerousness of the actor, as a person manifesting a firm disposition to commit a crime."[49] The commentary explains that both types of governing criteria may lead to the same disposition in a concrete case, but when they do not, the Model Penal Code

---

[45] American Law Institute, MODEL PENAL CODE & COMMENTARIES, Part I, Vol. 2, § 5.01(1)(c), 295-96 (1985).

[46] *Id.* § 5.01(2), at 296.

[47] *Id.*, § 5.01, exp. n., subsec. (1), at 297.

[48] *Id.*, subsec. (2).

[49] *Id.*, § 5.01, cmt. 1, at 298.

focuses on the actor's disposition.[50] Nevertheless, the commentary suggests that "the dangerousness of the actor's conduct has some relation to the dangerousness of the actor's personality," and so, while rejecting dangerousness-of-conduct as "a working rationale," the commentary finds it to be "not entirely irrelevant."[51] The commentary also emphasizes that "the law must be concerned with conduct, not with evil thoughts alone."[52]

### E. Comparing the Texas and Model Code Versions of Attempt

The Texas attempt statute's "more than mere preparation" language seems aimed at the dangerousness of conduct rather than the actor's disposition, but the "specific intent" requirement of the statute seems to sweep in disposition as well. The Texas statute, then, would seem more rigorous than the Model Penal Code provision by requiring both objective dangerousness (in crossing the preparation line) and subjective disposition (for the culpable mental state). The Practice Commentary to the Texas provision seems to suggest as much,[53] explaining that attempt offenses seek both to "permit law enforcement personnel to intervene and prevent the harm intended" and to punish "those who demonstrate a disposition toward criminality before they do any real harm."[54]

---

[50] *Id.*

[51] *Id.* cmt. 5(b), at 323.

[52] *Id.* cmt. 1, at 298.

[53] Seth S. Searcy, III, and James R. Patterson, TEX. PENAL CODE § 15.01, *Practice Commentary*, 515 (Vernon's 1974) ("The 1970 proposed code established attempt responsibility before conduct progressed to the point that it tended to effect commission of the offense. It required only that there be a 'substantial step' toward commission, but that the actor's entire course of conduct be strongly corroborative of his intent to commit the offense."). But the Practice Commentary is less persuasive when, as here, the Legislature did not follow the Texas State Bar Committee's 1970 proposed draft. *See Thompson*, 236 S.W.3d at 798.

[54] *Id.* at 514.

## F. Convergence of Interpretation Between the Two Codes

But while the commentary to the Model Penal Code suggests that attempt liability turns on the offender's disposition, a number of courts have construed statutes (or common law) patterned on the Model Penal Code in line with the Texas approach. The federal circuits have unanimously construed the federal attempt statute—patterned on the Model Penal Code with its "substantial step" wording—as requiring more than mere preparation.[55] The Supreme Courts in at least eleven states and two territories have expressly construed parallel statutes or common law the same way,[56] while at least four other state high courts have implied that a "substantial step" must also be one that is beyond mere preparation.[57] But at least six state high courts have held or opined that the Model

---

[55] *United States v. Pérez-Rodríguez*, 13 F.4th 1, 13 (1st Cir. 2021); *United States v. Pugh*, 937 F.3d 108, 118-19 (2d Cir. 2019); *United States v. Daniels*, 915 F.3d 148, 152, 160, 164-65 (3d Cir. 2019); *United States v. Hunt*, 99 F.4th 161, 177 (4th Cir. 2024); *United States v. Hill*, 63 F.4th 335, 362 (5th Cir. 2023); *United States v. Alebbini*, 979 F.3d 537, 546 (6th Cir. 2020); *United States v. States*, 72 F.4th 778, 789 n.7 (7th Cir. 2023); *United States v. Dennis*, 81 F.4th 764, 768 (8th Cir. 2023); *United States v. Howald*, 104 F.4th 732, 742 (9th Cir. 2024); *United States v. Faulkner*, 950 F.3d 670, 676 (10th Cir. 2019); *Ovalles v. United States*, 905 F.3d 1300, 1305 (11th Cir. 2018); *United States v. Hite*, 769 F.3d 1154, 1164 n.5 (D.C. Cir. 2014). *See also United States v. Taylor*, 596 U.S. 845, 851 (2022) (saying that "[w]hat exactly constitutes a substantial step is beyond the scope" of the case before it but finding it sufficient for present purposes to observe that the parties agreed "that a substantial step demands something more than 'mere preparation'").

[56] *State v. Flores*, 344 Conn. 713, 759 (2022); *Wittschen v. State*, 259 Ga. 448, 449 (1989); *State v. Daniels*, 134 Idaho 896, 899 (2000); *People v. Smith*, 148 Ill.2d 454, 459 (1992); *B.T.E. v. State*, 108 N.E.3d 322, 327-28 (Ind. 2018); *Young v. Commonwealth*, 968 S.W.2d 670, 674 (Ky. 1998), *overruled on other grounds by Matthews v. Commonwealth*, 163 S.W.3d 11, 26-27 (Ky. 2005); *State v. Farrad*, 164 N.J. 247, 257, 267 (2000); *State v. Hubbell*, 371 Ore. 340, 362 (2023); *State v. Oliveira*, 882 A.2d 1097, 1114-15 (R.I. 2005) (Model Penal Code version of attempt offense adopted as common law); *State v. Townsend*, 147 Wash.2d 666, 679 (2002); *Esquibel v. State*, 513 P.3d 148, 151 (Wyo. 2022); *People v. Quintanilla*, 2019 Guam 25, ¶14; *N. Mariana Islands v. Islam*, No. 2010-SCC-0015-CRM, 2013 WL 10079187, at *4 (N. Mar. I. May 21, 2013).

[57] *State v. Manchester*, 213 Neb. 670, 676 (1983) ("Substantial step" requirement for attempt was met in a prior case because "the defendant's acts went far beyond mere preparation."); *State v. Kilgus*, 128 N.H. 577, 583 (1986) (observing that current attempt statute required a "substantial step"

Penal Code's "substantial step" wording creates broader criminal liability than the "more than mere preparation" test, though two of those rejected the seemingly broader "substantial step" approach.[58] At least a few other states, by statute or by common law, have combined "substantial step" language with language that requires more than mere preparation,[59] rendering moot any question about

and that a case decided prior to the enactment of that statute noted that a substantial step is "an overt act directed to the commission of the crime intended, which goes beyond mere preparation and is apparently suitable for that purpose but fails to result in the commission of the intended crime."); *State v. Lail*, 937 N.W.2d 558, 562 (N.D. 2020) (stating that "[o]ther jurisdictions with similar attempt statutes have stated a substantial step is more than just mere preparation" and concluding that the defendant in its case "took steps beyond that of mere preparation"); *State v. Reid*, 393 S.C. 325, 331 n.4 (2011) (noting jurisdictions employing "various tests—primarily the substantial step test—to determine whether the defendant has moved beyond mere preparation").

[58] *People v. Lehnert*, 163 P.3d 1111, 1114 (Colo. 2007) (While "the notion of 'mere preparation' continues to be a useful way of describing conduct falling short of a 'substantial step[,]' the ultimate inquiry under the statutory definition concerns the extent to which the actor's conduct is strongly corroborative of the firmness of his criminal purpose."); *State v. Molasky*, 765 S.W.2d 597, 600 (Mo. 1989) (Older statute with "beyond mere preparation" language imposed "a tougher test for attempt" than newer statute with "substantial step" language.); *People v Lendof-Gonzalez*, 36 N.Y.3d 87, 92 (Ct. App. 2020) (rejecting "substantial step" test and characterizing it as "more lenient" than the requirement that "conduct must have passed the stage of mere intent or mere preparation to commit a crime."); *State v. Disanto*, 688 N.W.2d 201, 211 (S.D. 2004) (remarking "that the Model Penal Code relaxes the distinction between preparation and perpetration" and excluding from its analysis cases "using some form of the Code's definition of attempt"); *State v. Davis*, 354 S.W.3d 718, 732 (Tenn. 2011) (discussing prior case involving "possession of . . . materials [that] can serve no lawful purpose" that "observed that applying the pre-1989 common law analysis that sharply distinguished 'mere preparation' from an 'overt act' would likely have required reversal of the convictions for attempted murder" but convictions were affirmed under a "substantial step" analysis); *State v. Smith*, 548 P.3d 874, 880-81 (Utah 2024) ("[I]f, in a particular case, preparatory actions are deemed not to constitute a substantial step, it is because the conduct in question did not strongly corroborate the actor's intent to commit the underlying crime under the circumstances, not because there is a categorical rule that preparation is insufficient as a matter of law.").

[59] *State v. Beckwith,* 117 A.3d 1049, 1052 (Me. 2015) (Attempt statute defined "substantial step" as "any conduct that goes beyond mere preparation and is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime."); *State v. Wilkie*, 946 N.W.2d 348, 352 (Minn. 2020) (Attempt statute's language required "a substantial step toward, and more than preparation for" completion of the object crime.); *Lane v. State*, 348 Md. 272, 284 (1997)

whether the two approaches are different.

### G. Hunting a Particular Individual

In addition to stating a general rule that a "substantial step" must be "strongly corroborative" of the criminal purpose, the text of subsection (2) of the Model Penal Code's attempt provision also lists seven specific situations that, "if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law."[60] The first of those situations is "lying in wait, searching for or following the contemplated victim of the crime."[61]

The fact that this situation is listed first carries at least a suggestion that it is the most obvious example of a "substantial step" that shows an attempt. The Model Penal Code's expanded commentary suggests that this situation involves conduct with a high degree of dangerousness:

> The thought is that acts of following, searching, or lying in wait with criminal purpose manifest, *without more,* sufficient dangerousness to provide a proper basis for imposing liability.[62]

Several federal decisions have found an act complying with the Model Penal Code's first situation to be sufficient to establish attempt for an assaultive offense. The Ninth Circuit held that attempted robbery of marijuana smugglers was established when the defendants "equipped themselves with assault-style weapons . . . and traveled to an area where they expected to find the

---

(Under common law crime of attempt, conduct under "substantial step" requirement must go "beyond mere preparation.")

[60] MODEL PENAL CODE & COMMENTARIES § 5.01(2)(a)-(g), at 296.

[61] *Id.* § 5.01(2)(a).

[62] *Id.* § 5.01, cmt. 6(b)(i), at 334 (emphasis added).

intended victims."[63] The court rejected the argument that, because the defendants failed to find any victims, attempt was not established.[64] The Tenth Circuit held the evidence was sufficient to show more than preparation for attempted tampering—the tampering being the murdering of a witness—because the defendant was found traveling to the city of the planned "hit" on the day the hit was to take place with no apparent business other than the hit.[65] The Sixth Circuit found an attempted assault when members of a gang, while armed, traveled to locations where they expected to find members of a rival gang with the intent to attack them.[66] In *United States v. Duran*, the DC Circuit concluded that there was ample evidence to show an attempt to assassinate President Clinton when the defendant had "purchased a rifle, ammunition clips, and an overcoat large enough to conceal the rifle . . . , then traveled to Washington, D.C. and stood by the White House gate with the rifle and ammunition concealed."[67]    It is significant that federal courts have found the search/follow/lie-in-wait situation to be sufficient to cross the line between preparation and attempt because the federal courts have explicitly incorporated the "more than mere preparation" element

---

[63] *United States v. Soto-Barraza*, 947 F.3d 1111, 1121 (9th Cir. 2020).

[64] *Id.*

[65] *United States v. Washington*, 653 F.3d 1251, 1265-66 (10th Cir. 2011).

[66] *United States v. Khalil*, 279 F.3d 358, 368-69 (6th Cir. 2002).

[67] *United States v. Duran*, 96 F.3d 1495, 1508 (D.C. Cir. 1996) (ellipsis inserted).  Although the defendant later fired at someone who resembled the President, the court held that the defendant "had already completed the crime of attempted assassination of the President before he began firing towards" this person, so the court avoided deciding whether the evidence of firing at the wrong individual would have been sufficient to show an attempt. *Id.*

required by the Texas statute into the "substantial step" test required by the federal statute.[68]

As explained earlier, one of the main concerns behind the law of attempt is to give law enforcement a margin of safety that permits intervention while the intended crime can still be prevented. Appellant had three different weapons that were easily reachable and loaded, with ammunition in the chamber.[69] If Officer Price had waited until Appellant arrived at his location, he might well have been killed that day. The fact that the "prey" evaded the hunter does not mean the hunter did not cross the "more than mere preparation" line.

Some well-known real-world incidents illustrate how a person can cross the "more than mere preparation" line without being in close proximity to or aiming a weapon at the intended target. As discussed above, *Duran* involved an attempt to assassinate President Clinton, even though the would-be assassin was never within striking distance of the President, and the attempt was deemed complete even before the would-be assassin raised his weapon. Within the past year, President-elect Donald Trump narrowly escaped being killed by an assassin's bullet. That conduct was obviously an attempted murder by any definition, but if the shooter had been stopped while climbing the roof with his firearm, his conduct would still have crossed the "more than mere preparation" line. By the time the shooter reached the roof, there was not a sufficient margin of safety to prevent death or injury, as the events of that day revealed. And even more recently, a man waiting near a golf course for President-elect Trump was discovered because his weapon was poking out of the tree line. This

---

[68] *See supra* at n.55. *Cf. United States v. Sanchez*, 667 F.3d 555, 563-64 (5th Cir. 2012) (rejecting the inverse claim that the Texas attempt statute sweeps more broadly than the federal statute and remarking that "the substantial step test . . . requires not only that a defendant's acts amount to more than mere preparation, but also that those acts are strongly corroborative of the defendant's criminal intent").

[69] Appellant also had extra ammunition.

incident is being called, "an apparent assassination attempt." This is true even though the president-elect was not yet within firing range.

### III. CONCLUSION

We conclude that Appellant crossed the line between preparation and attempt when he spotted Officer Price and drove to where he was seen. Appellant's actions crossed this line because he hunted Officer Price. And we conclude that his actions constituted hunting because (1) after expressing an intent to kill a police officer, he drove around searching for a potential victim; (2) after spotting a police vehicle, and with an expressed intent to kill, he drove to the place where he had spotted that vehicle; and (3) he had, within easy reaching distance, at least one loaded firearm with a round in the chamber.[70] We do not hold that these facts are the minimum necessary to establish

---

[70] Judge Slaughter's dissent contends that we excise the phrase "tends but fails to effect" from the statute, but we do not. Rather, in line with prior cases, we construe the entire phrase "more than mere preparation that tends but fails to effect the commission of the offense." The point of the prior cases is that this entire phrase creates an "imaginary line" that separates "mere preparation" from conduct that "tends but fails to effect" the offense. *See supra* at n.26. Judge Slaughter's dissent also contends that we improperly rely upon extratextual considerations, as if the statutory language were ambiguous. But the language is not ambiguous; it is imprecise. Where to draw the imaginary attempt line is an inquiry into common sense. An "I know it when I see it" approach to resolving that inquiry would support concluding that Appellant crossed the line, but lawyers and judges generally eschew the "I know it when I see it approach" (because it can be based on mere intuition that is not always reliable) and seek to have holdings supported by more concrete reasoning. We review the Model Penal Code and Commentaries and the Texas Penal Code's Practice Commentary not as extratextual sources but as legal commentary that inform the inquiry into common sense, giving concrete expression to what might otherwise be mere intuition. Judge Slaughter's dissent is correct that the Model Penal Code provision differs dramatically from the Texas provision, but that is why the Model Penal Code commentary is important. The search/follow/lie-in-wait situation outlined in the Model Penal Code uniquely addresses the dangerousness of the offender's *conduct*—which goes to the heart of what the Texas statute seeks to accomplish. The search/follow/lie-in-wait situation is an exception to the Model Penal Code's general offender-focused approach to attempt because the danger posed by that type of conduct is so obvious. Our analysis narrowly construes that situation. And the focus on dangerousness has to be on the facts as the defendant understood them to be. *See Ex parte Hicks*, 640 S.W.3d 232, 233 (Tex. Crim. App. 2022) ("When a defendant has an objective that is forbidden in criminal law but

"more than mere preparation" for attempt. The question of whether lesser facts will show an attempt is not before us. In this case, we need only hold—and do hold—that these facts were sufficient.

We reverse the judgment of the court of appeals and remand the case to it to address Appellant's remaining claims.

Delivered: November 20, 2024
Publish

---

cannot achieve that objective due [to] a circumstance that is unknown to him, then factual impossibility exists. For example, factual impossibility includes attempting to pick an empty pocket and attempting to kill with a poison that was not lethal. Factual impossibility is not a defense, even in the context of attempt.") (citations omitted). The fact that Officer Price was no longer at the location was irrelevant because the evidence was sufficient to show that Appellant thought the officer would still be there. Judge Slaughter's dissent also expresses a concern about the operation of the renunciation defense if the police officer had stayed and Appellant had decided to drive past him. But her concern misunderstands the renunciation defense. Merely driving past the officer could qualify as renunciation, if it were voluntary, *see Thomas v. State*, 708 S.W.2d 861, 863 (Tex. Crim. App. 1986) ("conduct of walking toward the back fence can support such change of mind" to qualify as renunciation for an attempted burglary), but it is because the defendant would have already crossed the attempt line. "The defense is thus clearly directed at permitting a defense after an attempt to commit an offense has been committed, but before the object offense has been committed." *Id.* By evading detection, Officer Price did make voluntary renunciation impossible, but that result is contemplated by the renunciation statute, which says, "Renunciation is not voluntary if it is motivated in whole or in part . . . by circumstances not present or apparent at the inception of the actor's course of conduct that increase the probability of detection or apprehension or that make more difficult the accomplishment of the objective." *See* TEX. PENAL CODE § 15.04(c)(1) (ellipsis inserted). Judge Slaughter's dissent says that this provision does not support the notion that renunciation can sometimes be impossible, but it does when a voluntary renunciation is no longer possible because of third party actions. If, for example, a defendant were tackled by police right after committing an attempt, it would be impossible to renounce at that point. The fact that voluntary renunciation is a defense does not mean that a defendant must be guaranteed an opportunity to voluntarily renounce after the attempt line has been crossed.